# DORA E. EVANS et al. v. MARGARET A. MORRIS et al., Appellants.

### Division Two, April 11, 1911.

1. **EQUITABLE ESTATE: Deed to Wife.** A deed from a husband to a wife in 1879 vested a separate equitable estate in her, which upon her death ripened into a' legal estate in her children, subject to the curtesy right of her husband.

2. **WIFE'S DEED: Acknowledgment: Not Apart from Husband.** An acknowledgment to a deed by a wife executed in 1882, which did not recite that she was made acquainted with its contents, and that upon an examination separate and apart from her husband she acknowledged that it was executed freely and without compulsion or undue influence on his part, was not a legal acknowledgment, and her deed without such acknowledgment conveyed no 'title. And the reason for a separate examination is all the stronger where her husband is the grantee.

3. **CURATOR: Order Appointing: Minors Not Named.** An order of the probate court appointing a curator of minor children is not void because said order fails to specifically name said minors.

4. **HUSBAND NOT JOINING.** A deed by' a married woman eighteen years of age, made in 1901, is valid without her husband joining therein.

5. ———. **Contract to Convey: Husband Not Joining.** Likewise a contract to convey land, executed in 1900 by a married woman eighteen years old, is not invalid simply because her husband did not join her in the execution of the contract.

6. ———: ———: **Specifically Enforced Against Heirs.** A contract on the part of a married woman to sell and convey land, executed in 1900, in consideration of money actually received, may be specifically enforced against her children after her death.

7. **CURTESY: Resulting Trust: Adverse Possession.** Where the only right the deceased wife had was the right to establish a resulting trust in the land bought with her money and conveyed to her curator in his own name as sole grantee, and such grantee was at the time of her death in adverse possession under said deed, her husband upon her death, leaving children, prior to the establishment of the resulting trust, cannot have curtesy. She never had such seizin as would vest him with curtesy.

234 Sup.—12

8. ———: **Reinvestment of Estate.** Where a father, entitled to curtesy in lands, sells both his own interest, and as curator of his minor children their interests also, and invests the proceeds in other lands, taking title in his own name as sole grantee, and then dies leaving children by a second. wife, and suit is brought by the children of the first wife to establish a resulting trust, the value of his curtesy in the first tract which went to purchase the last tract, should be deducted from the amount for which the first tract was sold; and the value of his curtesy can be ascertained by the usual method of computing life estates.

9. **HOMESTEAD: In Lands in Which Others Have Resulting Trust.** Where a father used the money of his children by his first wife to buy land and took the title in his own name, and then married again and died leaving children by the second wife, neither she nor they have any homestead in so much of the land as the children by the first wife are entitled to establish a resulting trust in.

Appeal from Linn Circuit Court.—*Hon. John P. Butler*, Judge.

REVERSED AND REMANDED.                                    •

*A. W. Mullins* and *Bailey & Hart* for appellants.

(1)   The court erred in refusing to admit in evidence the deed from Nancy J. Morris to her husband, George M. Morris, conveying the land which George M. Morris sold as curator, the proceeds of which sale were invested in the land which the trial court found was held by George M. Morris as trustee for his children.   A deed from the wife to the husband is good and will convey the legal title to the husband.   Glascock v. Glascock, 217 Mo. 362; Rice-Stix v. Sully, 176 Mo. 107; Grimes v. Reynolds, 184 Mo. 692; O'Day v. Meadows, 194 Mo. 614; Bower v. Daniel, 198 Mo. 320. (2)   The court erred in refusing to admit in evidence the deed from Eliza E. Shifflett, Sarah J. Morris and Dora E. Evans, heirs at law of Nancy Morris, conveying the land which the decree finds was held by George M. Morris as trustee, to the said George M. Morris, dated October 1, 1901.   This deed was ex-

cluded by the trial court for the reason that these grantors were married women at the time the deed was made and their husbands did not join in the deed. These deeds conveyed the interest of these respondents without their husbands joining. Farmers' Bank v. Hageluken, 165 Mo. 443; Kirkpatrick v. Pease, 202 Mo. 491; O'Day v. Meadows, 194 Mo. 614; Glascock v. Glascock, 217 Mo. 362. (3) The court erred in refusing to admit in evidence the contract entered into November 3, 1900, between Isabella Francis Gash, who was a daughter of Nancy Morris, and her father, George M. Morris, which released all her interest in the land which the court found George M. Morris held in trust, to the said George M. Morris. This contract was executed November 3, 1900, and the fact that she was then a married woman did not affect her right to make this contract. Farmers' Bank v. Hageluken, supra; Kirkpatrick v. Pease, 202 Mo. 491; Glascock v. Glascock, 217 Mo. 362. (4) The decree rendered by the trial court fails to follow the evidence, and is unsupported by the evidence in several particulars. The evidence discloses, and the court found, that George M. Morris in his lifetime had acquired by purchase the interest of his daughter, Sarah J. Gash, in the land, and had inherited an undivided one twenty-fifth interest therein from his infant daughter, and that he died seized thereof. That he left surviving him the defendants, his widow and five minor children, and that they lived on this land as their home. Under this finding the defendants are clearly entitled to a homestead in that part of the land of which George M. Morris died seized. This the trial court failed to give them. The defendant Margaret A. Morris was also entitled to dower in that part of the land of which her husband, George M. Morris, died seized. This the court failed to allow her, but in lieu thereof gave her a judgment for $100 to be paid out of the shares in the land which

the court found belonged to Ella Elsie and Oliver Mate Gash, which shares the court found were also subject to the curtesy of plaintiff, Edward Gash, but the court failed to determine which, said dower or said curtesy, has the priority. The court also in its judgment seems to ignore the plaintiff, Ella Elsie Gash, by failing to give her anything.

*Bresnehen & West* for respondents.

(1) The deed purporting to have been executed by Nancy J. Morris and purporting to convey her 60 acres of land to George M. Morris, her husband, dated December 9, 1882, is void. (a) Because the deed of a married woman wherein she is not joined by her husband made prior to the amendment of the Married Woman's Act in 1889 is void. Huff v. Price, 50 Mo. 228; Shroyer v. Nickell, 55 Mo. 264; McReynolds v. Grubb, 150 Mo. 352. Because said deed was not acknowledged in accordance with the requirements of the statute then in force. R. S. 1879, sec. 681; Bagby v. Emberson, 79 Mo. 139; Goff v. Roberts, 72 Mo. 570; Bartlett v. O'Donoghue, 72 Mo. 563; Wannall v. Kern, 51 Mo. 150. (c) Because said deed purports to have been made by the wife direct to the husband, and in such case the burden is on the husband to show that the deed was the result of her free will and consent after a full disclosure of all the facts and circumstances attending the transactions. Ilgenfritz v. Ilgenfritz, 116 Mo. 429. (d) Because, the acknowledgment not being according to law, there is no proof of the execution of said deed. (2) Regardless of the alleged deed from Nancy J. Morris to George M. Morris, her husband, said George M. Morris, by his action in making the sale of the land described in said deed as curator of his children's estate, has estopped himself and those claiming under him from denying that they were the owners of said land. (3) By the action of George

M. Morris in reporting to the probate court in his settlement as curator of the estate of his children that he had invested their money in the land in controversy, he has estopped himself and those claiming under him from denying the title thus acquired by them. (4) The evidence does not show whether Louisa (Eliza) E. Shifflett and Dora E. Evans were married or single at the date of the amendment of the Married Woman's Act in 1889, but if married at that time, having acquired the land in controversy prior to that, then they could only convey said land by deed wherein their respective husbands joined. Leet v. Bank, 115 Mo. 184; Farmers' Bank v. Hageluken, 165 Mo. 443. (5) Even if the deed executed by Louisa (Eliza) E. Shifflett and Dora E. Evans was effective to convey their title their husbands did not join in the deed, and they would have a curtesy interest in the land. (6) The contract alleged to have been made between Isabella Frances Gash and her father, George M. Morris, does not purport to convey her interest in the land in controversy to him. (7) Counsel for appellants are right in their contention that the defendants are entitled to homestead in whatever interest George M. Morris owned in the land in controversy at the time of his death; and that portion of the decree setting out the interests of the respective parties should be so modified as to set out the interest of Ella Elsie Gash.

BROWN, J.—This is an action in equity to establish a resulting trust in 86 acres of land in Linn county, Missouri.

One George M. Morris, late of Linn county, was twice married. Plaintiffs are his children and grandchildren through his marriage with Nancy Morris, his first wife. The defendants are his widow and children, by his second marriage, except defendant Sarah J. Gash, who is a daughter by his first marriage.

Plaintiffs were partially successful at the trial below, the court decreeing the title as follows: To plaintiff Evans, $\frac{122}{450}$, to plaintiff Shifflett, $\frac{122}{450}$, to plaintiff Oliver Mate Gash, $\frac{61}{450}$, to defendant Sarah J. Gash, $\frac{14}{450}$, to the defendants Marion Morris, Edward Morris, Lola Morris, Ivy Morris and Alpha Morris (the last named five being children of the second marriage), $\frac{44}{450}$ each; and to Margaret Morris, widow of George M. Morris, a lien of $100 upon the interests of Ella Elsie Gash and Oliver Mate Gash. There was a finding in favor of plaintiff Ella Elsie Gash, but no interest awarded to her. From this decree, defendants appeal.

The decree below is erroneous in many particulars—both as to form and substance. While it is our custom in suits of this character to retry the cause and direct the lower court to enter such judgment as it should have given, it is impossible for us to do so in this case, on account of the indefinite and unsatisfactory nature of the evidence.

Some of the errors in the decree entered below arise from an erroneous construction of deeds offered in evidence; and we will construe these deeds so that proper effect may be given to them upon a retrial.

The interests of the plaintiffs in the 86 acres in controversy result from the investment therein of the proceeds of a sixty-acre tract in which they held part of the title. Consequently, to determine plaintiffs' rights in the eighty-six acres now in dispute, we must first ascertain what interest they held in the sixty acres.

The title of plaintiffs in the sixty-acre tract was vested in the following manner:

First, a deed from George M. Morris to Nancy Morris, his wife, dated December 25, 1879. This conveyance vested in Nancy Morris (the ancestor of plaintiffs) a separate equitable estate, which upon her death ripened into a legal estate in her children, sub-

ject to the curtesy right therein of her husband, unless the next conveyance hereinafter mentioned transferred the title back to her husband. [Pitte v. Sheriff, 108 Mo. 110; Stark v. Kirchgraber, 186 Mo. 633, 1. c. 641, 642 and 643; Miller v. Quick, 158 Mo. 495.]

On December 9, 1882, said Nancy Morris made a conveyance of the above mentioned sixty acres to her said husband, George M. Morris. The validity of this deed is challenged, first, on the ground that Mrs. Morris could not convey her interest in this land without her husband joining her; and second, that the acknowledgment does not recite that she was examined apart from her husband. The acknowledgment is as follows:

> State of Missouri, County of Linn: S. S. Be it remembered that on the 9th day of December, A. D., 1882, before the undersigned, a justice of the peace, within and for the county of Linn, aforesaid, personally came Nancy Morris, who is personally known to me to be the same person whose name is subscribed to the foregoing instrument of writing as the party thereto, and acknowledged the same to be her act and deed for the purposes therein mentioned. In testimony whereof I have hereunto, etc. (Signature omitted).

It is unnecessary to determine whether or not Mrs. Morris possessed the power to make this deed without her husband joining her as a grantor therein. The law in force when it was executed prescribed that her acknowledgment thereto should recite that she was made acquainted with its contents, and that upon an examination apart from her husband, she acknowledged that it was executed freely and without compulsion or undue influence on his part. It will be seen that this acknowledgment contains no such recitals; and for aught that appears, the husband may have been personally present at the very time the officer took and certified the same. The husband being the grantee in this deed, the reason of the law which then required a separate examination applied with more force than if the deed had been made to a stranger. The execution of this deed not being proven and certified, as required

by law, it conveyed no title, and the trial court did not err in excluding it. [R. S. 1879, sec. 681; Goff v. Roberts, 72 Mo. 570 l. c. 572; Bagby v. Emberson, 79 Mo. 139.] The law which dispensed with separate examinations of married women in taking their acknowledgments, was first enacted in the year 1883, and took effect July 1st of that year. [Laws 1883, page 20.]

Nancy Morris retained the title to this sixty-acre tract until December 22, 1882, when she died intestate and was survived by her husband and five daughters, to-wit: Dora E., Isabella E., Sarah J., Eliza E. and an infant (name not given). This infant survived its mother only three months. The plaintiffs in this case are children and grandchildren of said Nancy Morris, as follows: Dora E., who intermarried with one Evans; Eliza E., intermarried with one Shifflett; Ella Elsie Gash and Oliver Mate Gash, children of Isabella E., who intermarried with one Edward Gash, and died before the institution of this suit. Edward Gash also asserts a claim of curtesy through his deceased wife, Isabella.

Sarah J. Gash, the remaining daughter of Nancy Morris, was made a party defendant herein, for reasons which will hereafter appear.

It will thus be seen that upon the death of the infant child of Nancy Morris, the title to the sixty acres became vested as follows: a life estate by the curtesy in the husband George M. Morris; remainder $\frac{6}{25}$ in each of the four surviving daughters hereinbefore named, and the remaining $\frac{1}{25}$ in the husband, by inheritance through his deceased infant child.

In the year 1885 while the title stood in this condition, George M. Morris was appointed curator of the estates of his four daughters, Isabella E., Sarah J., Eliza E., and Dora E. (all minors), and through the usual proceedings in the probate court, sold their interests in the sixty acres. The validity of this sale is not called in question except by an objection to the order

appointing Morris as curator, on the ground that said order did not recite the names of the minors for whom he was appointed. This objection was properly overruled by the court. [Reppstein v. Insurance Company, 51 Mo. 481.]

At his first annual settlement, made in May, 1886, George M. Morris reported to the probate court that he had sold the interests of his wards in the sixty acres, to one A. O. Baugher, for $650 and had invested $700 of the proceeds of such sale in other lands. The purchaser, A. O. Baugher, testified that he received two deeds for the sixty acres, one of them being the individual deed of George M. Morris, and the other a curator's deed, and that he paid only $650 as the full purchase price of the land. How George M. Morris, the ancestor of plaintiffs, was able to invest $700 as the proceeds of a $650 sale—in other words, how he came to have $700 of his wards' money within a few months after making the sale and paying the costs thereof, and also why he failed to receive anything for his life estate by the curtesy, and remainder of $\frac{1}{25}$ derived from his deceased child, is not disclosed by the evidence, and may have to be ascertained by the circuit court on a retrial of the cause.

About the year 1886 George M. Morris purchased the eighty-six acres of land now in controversy, taking deeds therefor in his own name. This is probably the same purchase which he referred to in his report as curator to the probate court. Just how much he paid for the eighty-six acres is not clearly shown by the evidence. The plaintiffs allege in their petition that he invested in this eighty-six acre tract $594.46 of moneys derived from the sale of the interests of his minor children in the sixty-acre tract; and the trial court found this allegation to be true; but the evidence is too indefinite for us to understand how that conclusion was reached.

The trial court failed to make any finding as to the aggregate price paid by George M. Morris for the eighty-six acres in controversy( but it did find that he was entitled to a $\frac{1}{25}$ interest therein, through the interest which he inherited from his infant child in the sixty-acre tract sold to Baugher.

The court further found that George M. Morris during his lifetime acquired the equitable interest of Sarah J. Gash, one of his daughters by his first wife, to the land in controversy, by a deed dated October 10, 1901. This is the reason why his said daughter Sarah J. Gash did not assert any title to the property in controversy and was made a party defendant herein. However, this deed and finding did not prevent the court from awarding her $\frac{14}{450}$ of the land; though no reason is apparent for its act in so doing.

In the trial of this case, defendants offered a deed dated October 10, 1901, executed by the plaintiffs Eliza E. Shifflett and Dora E. Evans, purporting to convey to their father, George M. Morris, all their interest in the land in controversy, except six acres. This deed was objected to and excluded on the ground that the said Eliza E. Shifflett and Dora E. Evans were then married women, and incapable of making a deed without their husbands joining them. The trial court committed error in excluding this deed, because these ladies, if they had attained the age of eighteen, were competent to transfer by their deed whatever interest they owned in the land, without their husbands joining them. [R. S. 1899, sec. 4335; R. S. 1909, sec. 8304; Farmers' Exchange Bank v. Hageluken, 165 Mo. 443; O'Day v. Meadows, 194 Mo. l. c. 614; Glascock v. Glascock, 217 Mo. 362.] This deed was also executed by the defendant Sarah J. Gash, and bars all three of these daughters from establishing a resulting trust in any part of the land in controversy, except the six-acre tract which appears to have been omitted from the deed.

In the further progress of the trial, defendants offered in evidence a contract executed on November 3, 1900, by Isabella Gash, the mother of plaintiffs Ella Elsie Gash and Oliver Mate Gash, by which contract it is alleged that said Isabella, in consideration of one hundred dollars, transferred all of her interest in the property in controversy to her father. This contract was also objected to and excluded on the ground that said Isabella Gash was then a married woman, and incapable of contracting regarding her interest in the land, although her husband appears to have been personally present and gave his oral consent to the contract. It is contended by the plaintiffs that the contract only purported to convey from said Isabella to her father a right to use the land during his natural life. This contract is not set out in the record, and we cannot determine its legal effect, but if its execution was proven, the court committed error in excluding it. In regard to this document, we will say that if it amounted to a contract on the part of Isabella Gash to sell or convey her interest in the land to George M. Morris in consideration of the $100 which it appears she received at the time it was signed, then upon proper pleadings, it may be specifically enforced against her children, Ella Elsie Gash and Oliver Mate Gash. [Kirkpatrick v. Pease, 202 Mo. l. c. 492.]

It seems that the trial court, notwithstanding it excluded this contract, gave some effect to it by decreeing a lien of $100 in favor of defendant Margaret Morris against the interests of plaintiffs Ella Elsie Gash and Oliver Mate Gash. We do not condemn this part of the decree, not having any evidence before us as to the legal import of the contract. The lower court will see that this contract is properly construed upon a retrial of this cause.

It is contended by the plaintiff Edward Gash that he has a curtesy interest in the whole eighty-six acres in controversy, as the husband of Isabella Gash; but

his claim must be wholly rejected for the reason that his wife never had such a seisin or title to this property as would bring the right of curtesy into existence. The only title Isabella Gash ever possessed during her lifetime was a right to establish by suit a resulting trust on account of the investment of her funds in this property, and as the property was in the adverse possession of the father under a deed which did not in terms create in her any legal or equitable estate, no right of curtesy became vested in her husband. [1 Tiffany on Real Property, sec. 205, 287; Dozier v. Toalson, 180 Mo. 546, l. c. 551; Ellis v. Kyger, 90 Mo. 600.] In Dozier v. Toalson, supra, a conveyance was made to the wife in which the grantor reserved the possession, use and income of the property during the life of the grantor. In that case the wife died during the lifetime of the grantor, and we held that she never acquired such seisin in the land as would create in her husband an estate by the curtesy; so that with stronger reason it may be said that a mere right to sue for the establishment of a resulting trust would be wholly insufficient to create such a seisin in Isabella Gash as would vest title by curtesy in her husband.

In order to correctly ascertain the interests of Dora E. Evans, Eliza E. Shiflett and Sarah J. Gash in the six acres which they did not convey to their father, and to further determine the interests of plaintiffs Ella Elsie Gash and Oliver Mate Gash (if it be found that these children of Isabella Gash have an interest), it will be necessary to ascertain what amount was paid by their father George M. Morris for the whole 86 acres in controversy, and to compute the value of his life estate in the proceeds of the sixty acres which was sold to raise funds with which to purchase this property. From the record it appears that the said George M. Morris died September 29, 1906, at the age of fifty-nine years. Therefore he was thirty-eight years old at the time he sold the sixty acres;

and the value of his life estate at that time in the $650, the proceeds of said sixty-acre tract, can be ascertained by the usual method of computing life estates.    The value of his life estate by the curtesy in the sixty acres owned by his first wife, together with the value of the one twenty-fifth interest in remainder therein which he inherited from his deceased child, should be subtracted from the $650 and the remainder will represent the amount of funds belonging to the children of his first wife which he invested in the eighty-six acres in controversy; and will form the basis for determining their right to establish a resulting trust in such of the land as they did not convey or contract to convey to their father during his lifetime.

The plaintiffs Evans and Shiflett are entitled to the same ratio of interest in the six acres that they would have held in the whole tract had they not conveyed eighty acres thereof to their father.

As hereinbefore stated, George M. Morris, after his purchase of the land in controversy, married the defendant Margaret Morris, of which marriage five children were born, to-wit, the defendants Marion Morris, Edward Morris, Lola Morris, Ivy Morris and Alpha Morris, all minors.    The children by the second marriage are of course tenants in common with the plaintiffs as to such interests in the land in controversy as plaintiffs cannot recover as a resulting trust; but neither the widow nor the children by such second marriage can have any homestead right in any interest or share in the property to which plaintiffs succeed in establishing a resulting trust.    [White v. Drew, 42 Mo. 561; Miller v. Miller, 148 Mo. 113.]

The pleadings in this cause do not demand the setting off of dower or homestead rights, and we have not considered that point in the briefs filed herein.

For the numerous errors committed by the trial court, as hereinbefore announced, its judgment is reversed and the cause remanded for a new trial.

*Kennish, P. J.,* and *Ferriss, J.,* concur.