ADOLPHUS MEADOR, J. FRANK MEADOR, WILLIAM ATNIP, ROY LESLIE ATNIP, KATHERINE FAULKNER, JOHN HERBERT ATNIP, WILLIAM FRANKLIN ATNIP, CORA ELIZABETH WAGNER, EARL CHESTER ATNIP, a Minor, MINNIE M. ATNIP, a Minor, by WILLIAM ATNIP, Their Guardian and Curator, Appellants, v. NINNIE WARD, CALLIE L. BELL, PEARL BIGGERSTAFF, LUNA CHILTON and ANNA MEADOR.

Division One, March 7, 1924.

1. **CONVEYANCE: Grant of Fee: Exception of Life Estates.** A warranty deed by which a husband and wife conveyed certain lands to their daughters upon the express stipulation that "the parties of the first part are to have the peaceable possession of the premises herein described for and during their natural lifetime" did not operate to convey to the wife a life estate in the husband's lands, nor to the daughters a full fee, but there was excepted from the grant an estate for and during the lives of both grantors, which was not conveyed to any one, but remained in the husband, and at his death, the wife having survived him, the outstanding estate "for the life of another" descended to his heirs. [Following Lemon v. Lemon, 273 Mo. 484.]

2. ———: **Of Separate Lands of Husband and Wife by Joint Deed: Delivery: Wife as Witness: Other Party.** A husband, possessed of 398 acres, and a wife, possessed of 180 acres, by their joint deed conveyed the lands to their five daughters, excepting therefrom the peaceable possession of the premises during their natural lives. A suit being brought by their two sons, after the husband's death, to set the deed aside, they presented evidence which fell short of

Meador v. Ward.

showing delivery of the deed by him, but sufficient to destroy the presumption of delivery arising from the grantees' possession of the deed. Thereupon defendants offered the surviving wife as a witness, whose testimony, if she was competent to testify, showed the deed was delivered by the husband in his lifetime. *Held*, that, as the deed did not convey, or purport to convey, to the wife any interest in the lands, she was not "the other party" to the contract between the husband and the daughters, and was not disqualified to testify by the statute which declares that where "one of the original parties to the contract" is dead "the other party shall not be permitted to testify in his own favor."

*Held*, by WOODSON, J., concurring in the result, that the wife, having by the reservation in the deed acquired a life estate in the husband's lands, was disqualified as "a party" to testify that the deed was delivered, but as her evidence showed that in delivering the deed she acted as his agent and under his direction, she was qualified to so testify under the statute (Sec. 5415, R. S. 1919) declaring that no married woman shall be disqualified as a witness to testify concerning transactions conducted by her as the agent of her husband.

Headnote 1:   Estates, 21 C. J. sec. 69.   Headnote 2:   Witnesses, 40 Cyc. 2282, 2288.

## Appeal from St. Francois Circuit Court—*Hon. Peter H. Huck*, Judge.

AFFIRMED.

*Brookshire & Kinder, O. L. Munger* and *Curlee & Hay* for appellants.

(1) The evidence, excluding the testimony of Demaris A. Meador, fails to show a delivery of the deed. On the contrary it affirmatively and conclusively shows that there was no delivery during the lifetime of James F. Meador.   Terry v. Glover, 235 Mo. 550; Mudd v. Dillon, 166 Mo. 110; Berkmeier v. Peters, 111 Mo. App. 720; Sheldon v. Crane, 125 N. W. 138; Bowers v. Cottrel, 96 Pac. 939; Gould v. Wise, 97 Cal. 532; Hadlock v. Hadlock, 22 Ill. 384; Colyer v. Hyden, 21 S. W. 868.   (2) The testimony of Demaris A. Meador was improperly ad-

mitted in evidence. R. S. 1919, sec. 5410; Terry v. Glover, 235 Mo. 549. (3) The delivery of the deed by Demaris A. Meador to her daughter, one of the grantees, was, upon the record, excluding the testimony of Demaris A. Meador, without the authority of James F. Meador, and therefore the said delivery was invalid, and did not effect a transfer of the title to any of said land, whatever view may be taken of the status of the title at the time of the execution of said deed. 18 C. J. 212.

*V. V. Ing* and *Wm. A. Settle* for respondents.

(1) The delivery of a deed so far as the grantor is concerned is a matter of intention, and where the intention clearly appears the act in pursuance thereof will be construed to constitute delivery. Harvey v. Long, 260 Mo. 374. (a) The intention is presumed from the fact of acknowledgment as required by statute, and, without more, there is a legal delivery proved. Coulson v. Coulson, 180 Mo. 709; Harvey v. Long, 260 Mo. 374. (b) The delivery of a deed may be shown by acts without words, or by words without acts, or by words and acts combined. Miles v. Robertson, 258 Mo. 717; Schooler v. Schooler, 258 Mo. 83; Rumsey v. Otis, 133 Mo. 95; Hamilton v. Armstrong, 120 Mo. 597; Crowder v. Searcy, 103 Mo. 97. (2) The deposition of Demaris A. Meador was properly admitted in evidence by the court, because she was the agent of James F. Meador, her husband, to "hold the deed for the girls," and to "have the deed recorded," and she is a competent witness to prove the agency and the acts done by her as such agent. Sec. 5415, R. S. 1919; Williams v. Moore, 203 S. W. 824; Cutts v. Davidson, 184 S. W. 921; Reed v. Peck, 163 Mo. 333; Ingerham v. Wetherman, 79 Mo. App. 840. (a) Demaris A. Meador was a competent witness to testify concerning all matters involved in the contract or cause of action sued on, because the deed, the cause of action sued on, was made by two persons on one side as grantors, and only one of them is dead, she being alive. Hill-

Dodge Co. v. Loomis, 140 Mo. App. 62; Insurance Co. v. Broyles, 78 Mo. App. 364. (b)   Demaris A. Meador was entitled to testify because she was a substantial party to the suit, and interested in the result thereof, except as to confidential communications of her husband.   Sec. 5410,.R. S. 1919; Roberts v. Bartlett, 190 Mo. 680; Layson v. Cooper, 174 Mo. 211; Vandergrif v. Swinney, 158 Mo. 527; Short v. Thomas, 178 Mo. App. 400; Scrutchfield v. Sauter, 119 Mo. 615; Harriman v. Stowe, 57 Mo. 93; Fugate v. Pierce, 49 Mo. 441.   (c)   The statute (Sec. 5415, R. S. 1919) denying the competency of the wife to testify in her own behalf, and for her husband, did not exclude the wife from testifying in a cause in which she was a real party in interest.   Freeland v. Williamson, 220 Mo. 217; Layson v. Cooper, 174 Mo. 211; Roberts v. Bartlett, 190 Mo. 680; Pace v. Railway Company, 174 Mo. App. 227; Scrutchfield v. Sauter, 119 Mo. 624.

RAGLAND, J.—This is a suit in equity for the cancellation of a deed and incidentally for the partition of the real estate therein described.

On March 25, 1918, James F. Meador and Anna Meador were husband and wife. They had two sons, Adolphus Meador and J. Frank Meador, and five daughters, Minnie Atnip, Ninnie Ward, Callie L. Bell, Pearl Biggerstaff and Luna Chilton. Between them they owned 578 acres of land in Wayne County, he having the legal title to 398 acres and she the title to 180 acres. On the date mentioned they signed and acknowledged a deed purporting to convey the entire tract of 578 acres to their five daughters. The deed was one of general warranty. Except in the particular presently to be noted it followed literally in its verbiage that found in the blank printed form in general use in this State for drawing general warranty deeds. Meador and his wife were described as "parties of the first part" and the daughters above named as the "parties of the second part." The consideration expressed was "the sum of natural love and affection and the sum of one and no/100 dollars." Im-

mediately following the description of the lands which constituted the concluding part of the granting clause, this language was inserted:

"It is herein stipulated and understood that the said parties of the first part are to have the peaceable possession of the premises herein described, for and during their natural lifetime."

The deed was filed for record by Ninnie Ward, one of the grantees, May 3, 1919. On the following day James F. Meador died intestate, leaving surviving him a widow, said Anna Meador, and the sons and daughters above named as his only heirs at law. Subsequently his daughter Minnie Atnip died leaving seven children.

On December 1, 1919, the two sons of Meador and the children of his deceased daughter instituted this suit against the four surviving daughters and the widow. As grounds for setting aside the deed from Meador and his wife to their daughters, the petition charged mental incapacity on his part and undue influence on theirs, and further, that the instrument had never been delivered by him. The answers of the defendants put all of these matters in issue. In her separate answer the widow, Anna Meador, claimed "the exclusive right to the possession, use, benefits and profits of all said lands as long as she shall live, under the provisions of said deed." Her co-defendants claimed title under the deed "subject only to the right of the exclusive possession, the sole use, profits and benefits of all the lands described in the deed in the defendant Demaris A. (Anna) Meador for and during her natural lifetime."

At the trial below plaintiffs abandoned all the grounds upon which they sought a cancellation of the deed except that of non-delivery. On that issue they offered the deposition of Ninnie Ward, one of the defendants, in the giving of which she testified, in substance, that during her father's last illness, a day or two before he died, her mother took the deed out of a box in her father's house, in which he kept his papers, and gave it to her; that she never saw the deed until that time;

that she did not know whether her father ever knew that the deed had been given her. Defendants then offered the deposition of the defendant Anna Meador. When the offer was made the following colloquy between counsel occurred:

"MR. ING: The Court please, we offer next the deposition of Demaris'A. Meador.

"MR. HAY: The widow of the deceased James F. Meador?

"MR. ING: Yes, sir.

"MR. HAY: And one who, under the deed, has a life interest in this land—that is true?

"MR. ING: A life interest."

Plaintiffs then made the following objection to the proffered testimony:

"We object to the testimony of this witness for the reason that under the provisions of this deed she is one of the parties in interest, having a like interest under and by virtue of the provisions of the deed, and the grantor conveying the fee of the estate in which she has a life interest being dead. Any testimony on the part of this witness would be incompetent."

The court first ruled that the witness was incompetent, but subsequently admitted her testimony. With reference to the execution of the deed it was as follows:

"Q. What was done with the deed after you and Mr. Meador signed it before Mr. Ford   A. He come home and gave it to me to take care of for the girls.

"Q. Did you take care of it for the girls?   A. Yes, sir.

"Q. State where the deed remained, in whose care and custody, who had it in their possession after it was delivered to you?   A. I put it in a box with his papers.

"Q. Who had charge of it, who kept it?   A. I did.

"Q. What was done with the deed a short time before Mr. Meador died.   A. He told me to have it put on record, on Thursday morning before he died.

"Q. On what day of the week did he die?   A. Sunday morning.

"Q. What did you do with the deed after your husband told you to put it on record? A. I taken it and given it to Ninnie Ward.

"Q. What did you tell her to do? A. I told her what her papa said—to take it and have it put on record."

The trial court found that the deed in question had been duly delivered by James F. Meador in his lifetime, and adjudged that under the provisions of that instrument defendant Anna Meador had a life estate in all the lands therein described, and the remaining defendants and the heirs of the deceased daughter were vested with the remainder in fee. Whereupon it dismissed plaintiffs' petition. From such judgment plaintiffs prosecute this appeal.

There is no question but that there was a delivery of the deed in controversy so far as Anna Meador, one of the grantors, is concerned. It is equally plain that it operated as a conveyance of her individual land, conveying the entire fee therein, save and except "the peaceable possession of the premises . .. . for and during their (grantors') natural lifetime." It is as the deed of James F. Meador that the delivery of the instrument is questioned and put in issue. On this issue plaintiffs' evidence tended to show that Anna Meador took the deed from a box in which her husband kept his papers and without his knowledge, consent or acquiesence gave it to one of the grantees. This evidence fell short of showing a delivery as to him (Dallas v. McNutt, 249 S. W. 35, 37), yet it was sufficient to destroy the presumption of delivery that might have arisen from the fact that the grantees were found in possession of the deed. This was the state of the proof when plaintiffs closed their case in chief. To meet this situation the defendants offered the testimony of Anna Meador, the surviving grantor. Her competency as a witness was immediately challenged by plaintiffs, and the ruling of the trial court with respect thereto constitutes the sole ground upon which they, as appellants here, seek a reversal of the judgment.

In support of their contention that the surviving grantor in the deed sought to be set aside was incompetent as a witness, appellants invoke the statute which provides "that in actions where one of the original parties to the contract or cause of action in issue and on trial is dead . . . the other party to such contract or cause of action shall not be admitted to testify in his own favor." In their brief they say: "The court will note that the ground of the disqualification of Anna Meador as a witness was and is not that she is the widow of James F. Meador, the grantor in the deed, but that she was and is a party in interest, and the other party thereto is dead." This brings the question within narrow compass. Reduced to its simplest terms, it is this: James F. Meador, a party to the deed, being dead, is Anna Meador "the other party" within the meaning of the statute?

On the face of the instrument James F. and Anna Meador constituted one party and their five daughters constitute the other party. But notwithstanding its recitals as to the parties to it, it is claimed that the deed if effective as a conveyance operated to convey to Anna Meador a life estate in the lands of James F. Meador, and that in so far as it was intended to perform that function he was one party to it and she the other. At the trial below both parties, and the court as well, seemed to take it for granted that the deed if given effect would convey to Anna Meador a life estate in her husband's lands. In this assumption they were clearly wrong. According to the terms of the deed the only persons to whom James F. Meador conveyed any interest whatever were his five daughters. The deed did not purport to convey to them the full fee it is true. There was *excepted from its grant* an estate for and during the lives of Meador and his wife. The estate so excepted was not conveyed to any one. It remained in James F. Meador. At his death, his wife having survived him, the outstanding estate *pur autre vie* descended to his heirs. In view of the very full consideration given the applicable principles of construction in Lemon v. Lemon, 273 Mo. 484,

in which a similar deed was construed, it is deemed unnecessary to elaborate on them here.

As the deed did not purport to convey, and did not in fact convey, to Anna Meador any interest in the lands therein described, she was in no sense a grantee. Being on the contrary a co-grantor with her husband, she was not "the other party" to the contract, and hence not disqualified by the provisions of the statute heretofore quoted from testifying with respect to it. [Hill-Dodge Co. v. Loomis, 140 Mo. App. 62; Insurance Co. v. Broyles, 78 Mo. App. 364.] As her testimony was not challenged on any other ground it was properly received in evidence. With reference to its effect, it constituted adequate proof of the delivery of the deed by the two grantors.

As already suggested there is an estate for and during the life of Anna Meador in the lands of James F. Meador which, subject to the widow's dower, descended to his heirs, and which is therefore subject to partition among them. Anna Meador's age is not disclosed by the record, but the partitionable estate is doubtless of small value. Plaintiffs have not asked, and probably do not want, partition of such an interest. In any event they have not assigned error as to the ruling of the trial court that the life estate belonged to Anna Meador instead of James F. Meador's heirs. On the contrary they insisted at the trial, and urge here, that if the deed be given effect the estate is hers. On this state of the record the judgment *nisi* should be affirmed. It is so ordered.

All concur; *Woodson, J.,* in separate opinion.

WOODSON, J. (concurring).—The plaintiffs brought this suit in the Circuit Court of St. Francois County to set aside and cancel a deed to, and to partition, about 578 acres of land situate in that county. The trial resulted in findings of fact and a decree for the defendants. In due time and proper form the plaintiffs duly appealed the cause to this court.

The facts are undisputed, except as to the delivery of the deed, which are as follows, and the evidence bearing upon the delivery will be fully stated later.

The plaintiffs are sons and a son-in-law and seven grand-children of James F. Meador, deceased, and the defendant Anna Meador is his widow. The other defendants are the four daughters of James F. Meador, deceased.

The deed sought to be set aside is the deed of James F. Meador and Anna Meador to their five daughters, Minnie Atnip, Ninnie Ward, Callie L. Bell, Luna Chilton and Pearl Biggerstaff, by which said deed they conveyed to their said daughters all of the lands owned by both of them. Plaintiffs seek to set aside and cancel the said deed on the alleged ground of mental unsoundness of the grantor, James F. Meador, undue influence practiced upon him by the grantees in the deed and their husbands, and non-delivery of the deed.

The defendant Anna Meador (Demaris A. Meador) owned the legal estate in fee in 180 acres of the lands described in the deed sought to be set aside, and James F. Meador, her husband, now deceased, owned the remainder of the lands at the time the deed was executed.

Demaris A. Meador became the owner of the 180 acres of land by inheritance from her father, by deeds from her brothers, sisters and mother, and by partition between her and the other heirs of her deceased father, Conrad Kinder, all of which is admitted by plaintiffs by admissions made by them on the trial of the case.

Plaintiffs claim that the lands owned by Anna Meador (Demaris A. Meador) do not, in fact and in law, belong to her, or did not belong to her at the time of the execution of the deed to her daughters, for the alleged reason that she had previously conveyed all of her interest in said lands to her husband, James F. Meador, and, therefore, she had no interest or title in the lands to convey by said deed, and that the grantees received no title by the deed from her, and that the deed from James F. Meador is void for the reasons above stated.

Defendants claim that the deed is valid and binding as a conveyance both as to James F. Meador and Demaris A. Meador. The defendant Demaris A. Meador, by her separate answer, claims that she was the owner of 180 acres of lands involved in this suit, and that she intended to convey it to the five daughters, and now intends for the deed to stand. The four living daughters, Ninnie Ward, Callie L. Bell, Luna Chilton and Pearl Biggerstaff, claim in their separate answer that the deed is valid and binding as to both James F. Meador's land and the land of Demaris A. Meador. Plaintiffs admit that at one time after Demris A. Meador became the wife of James F. Meador, deceased, and while she was living with him as his wife, she became the owner of the 180 acres of the lands involved in this action in her own right, but they claim that she conveyed the lands to her husband, James F. Meador, which is denied by all of the defendants.

James F. Meador and Demaris A. Meador, called ''Anna Meador'' in plaintiffs' second amended petition, were married August 22, 1872, and continued to live together as husband and wife from that date to the death of James F. Meador on the 4th day of May, 1919.

After their marriage to each other, and after Demaris A. Meador became the owner of the lands described in her separate answer, she executed two deeds to James F. Meador, by which she attempted to convey to him her interest in said lands, but both deeds are null and void and did not convey her interest in said lands to the said James F. Meador, because they were not acknowledged in accordance with the law in force at the time of the execution of said deeds.

The deed which plaintiffs are seeking to set aside in this action was executed by James F. Meador and Demaris A. Meador on the 26th day of March, 1918, before Chas. B. Ford, a notary public, in Patterson, Missouri. The deed was read to them by him, and Mr. Meador indicated to him that he wanted to execute the deed as written, which was accordingly done. Afterwards Mr.

Meador gave the deed to Mrs. Meador and told her to keep it for the girls, which she did, as testified to by her, until the 1st day of May, 1919, when she delivered the deed to Ninnie Ward, one of the grantees therein, and directed her to have it recorded, which was done by her husband, C. C. Ward, on the 3rd day of May, 1919, and she testified that she delivered this deed as directed by Mr. Meador.

The plaintiffs have abandoned every ground alleged in their petition as a reason for setting aside said deed, except non-delivery of the deed, and make the claim that if the deposition of Mrs. Meador is excluded there is no evidence of delivery, but in making this statement they have completely overlooked the testimony of Ninnie Ward, one of their witnesses herein, which they brought out themselves, and which proves delivery of the deed in the lifetime of the grantor, James F. Meador.

Over the objection of the plaintiffs, defendants introduced the deposition of Anna Meador, the widow, regarding the delivery of the deed of James Meador, and herself to the defendants, to which action of the court the plaintiffs duly excepted.

I.   As previously stated the plaintiffs abandoned the charges that the grantor, James Meador, was mentally unsound, and that he executed the deed under the pressure of undue influence, and went to trial upon the sole charge that there was no delivery of the deed by the grantor to the grantees.  This of course brings us to the consideration of the question of the delivery of the deed mentioned.  There is no dispute as to the facts that the grantors in the deed signed the deed, and duly acknowledged the same, and that thereafter the notary who took the acknowledgment handed it back to James F. Meador, one of the grantors, who took it home, and placed same in a box or drawer in the dining room with other of his papers.

The next appearance of the deed in this record was on Thursday, May 1, 1919, before the death of the grantor on Sunday, May 4, 1919.  It was then in the drawer

where the grantor kept his papers and was taken there-from by his wife and given to Mrs. Ward, one of the grantees. The entire testimony covering this alleged delivery of the deed is given by Mrs. Ward as follows:

"Q. You have told me that at one time there was a conversation in which your mother told you that they had made a deed to you girls, and as I understand you that is all that was said at that time. Now, was anything ever said by either your father or your mother to you after that time? A. After what time?

"Q. After this one time you referred to? A. Why, not until just before he died.

"Q. What was then said? A. Mother gave the deed to me and I gave it to my son and he gave it to my husband.

"Q. Now, let me see if I understand you correctly—just before your father died what happened?

"Mr. Ing. I object to that question because it is not an issue in this case.

"Q. Now, you will please tell us what it was that was said? A. Mother said that father said to have the deed put on record, and she gave it to me and I gave it to my son and he gave it to my husband.

"Q. How long was that before your father died? A. That was on Thurday and he died Sunday morning at two o'clock.

"Q. Did your mother say when your father had told her to have this deed put on record? A. I don't know.

"Q. Did she tell you when your father had said this? A. I don't remember.

"Q. Was your father conscious at the time of his death? A. Yes, sir; plumb up until he couldn't speak. He knew everything.

"Q. Did you say anything to your father about this? A. No, sir; I didn't know they had made the deed until he told us about it.

"Q. Until he told you? A. Until mother told us, I mean.

"Q.   Where was the deed when you first saw it?
A.   Mother gave it to me.

"Q.   Where did she get it from?   A.   She got it from among the papers.

"Q.   Where was she when she gave it to you?
A.   In the home.

"Q.   In what part of the home?   A.   In the dining room, I believe—wasn't it, Pearl?

"Q.   Who else was present?   A.   My sister.

"Q.   Just you two?   A.   Yes, sir.

"Q.   Now, will you tell me everything that was said in that room about the deed?   A.   I don't know as I could remember and tell everything.   Nothing happened only just what I have told you.

"Q.   Have you told all that was said at that time?
A.   Yes, sir.

"Q.   Is that all that you can recall that was said?
A.   That is all that I can remember.

"Q.   Did you see your mother get the deed from among the papers.   A.   Yes, sir.

"Q.   Where did she get them?   A.   Among the papers in the box where they were kept.

"Q.   And this was in the dining room?   A.   Yes, sir.

"Q.   And they were among your father's papers?
A.   Yes, sir.

"Q.   And she took it out from among his papers and gave it to you?   Is that correct now?   A.   Yes, sir.

"Q.   Had you ever seen the deed before she gave it to you?   A.   No, sir.

"Q.   Did you ever hear your father say anything to your mother about it   A.   No, sir.

"Q.   Where was your father at the time your mother gave this deed to you?   A.   He was in the dining room, too.

"Q.   Did your father see the deed in your possession?   A.   I don't know.

"Q. You say that you never mentioned the deed to your father and he never mentioned it to you? A. Yes, sir.

"Q. Did you ever hear anybody else say anything to your father about it? A. No, sir.

"Q. You say the first time you ever saw the deed, it was among your father's papers? A. Yes, sir; I saw her take it out from among them and hand it to me.

"Q. And after you got hold of the deed then you turned it over to your son and he delivered it to your husband? A. Yes, sir; he gave it to my husband"

Upon the trial of this cause, as previously stated, defendants offered in evidence the deposition of Anna (Demaris A.) Meador, the wife of deceased, to whom there was reserved a life estate in all of the land described in the deed. Plaintiffs objected to the admission of this testimony upon the ground that the witness was a party in interest within the meaning of the statute excluding the testimony of such a witness when the other party to the transaction is dead. The court admitted the deposition in evidence, and considered it in determining the issues. Said witness testified that deceased, upon returning to his home after deceased and said witness had acknowledge the deed before the notary, turned it over to her, his wife, to keep for the girls. She further testified that on the Thursday morning before his death deceased told her to give the deed to the girls, that it might be recorded. This was the only evidence in the entire record showing or tending to show any delivery of the deed by James F. Meador.

Defendants set up in their answer that certain of the land described in the deed was the property of Demaris A. Meador in her own right, the same having descended to her from her father's estate. The record shows that Demaris A. Meador, the wife, undertook to convey this land to her husband, the deceased, but defendants contended and the court held that the conveyances whereby the wife undertook to transfer the fee in said land to her husband were void, and that therefore

Demaris A. Meador was the owner of the fee to said lands at the time of the execution of the deed in question. Plaintiffs, on the other hand, contended and do contend that deceased was the owner of the fee in all of said land at the time of such conveyance. The court rendered and entered the decree adjudging that the deed was duly delivered prior to the death of James F. Meador, and that it was a good and valid conveyance of all of the land described in said deed.

"Counsel for the plaintiffs objected to the testimony of Anna Meador, the widow of James F. Meador, and one of the grantees in the deed in controversy, because she was incompetent to testify, because her husband, the other party to the deed, was dead, and therefore under the statute she was disqualified to testify in the case. [Sec. 5410, R. S. 1919.]

As I understand counsel for the defendants, they try to escape the effect of this objection by showing that of the five hundred and seventy-eight acres of land conveyed by the deed in controversy, one hundred and eighty of it belonged to her and therefore she was a competent witness to testify on account of her own substantial individual interest, independent of the life estate she acquired from her husband under the deed in controversy, to the remaining 398 acres. Counsel for the defendants also try to make a distinction between the word "reserved" used in the deed, and the word "grant" or "convey" had the husband intended to convey said life estate to his widow.

In our opinion this is a distinction without a difference. That deed as it stands unchallenged is and was sufficient, for all practical purposes, to give and convey to her the life estate in that part of the land which belonged to the husband as completely as if the words "grant" and "convey" had been used therein.

I think there is no real merit in this branch of the contention.

As regards the first branch of the same contention, namely, that the widow was a competent witness on ac-

count of her substantial individual interest, the subject-matter of the deed, is in our opinion more plausible than sound.

It must be remembered that this deed is of two-fold nature: (a) it undertakes to convey the wife's one hundred and eighty acres, (1) a life estate to her, and (2) the remainder in fee to his and her daughters; and (b) the remaining 398 acres, (1) a life estate to her, and (2) the fee therein to his and her said daughters.

Before proceeding further with this branch of the case we must dispose of a preliminary matter and get it out of the way so we will not be confused by it in the discussion of the question we were dealing with. The record discloses that the deeds long before made by the wife by which she attempted to convey her one hundred and eighty acres of land to her husband were not executed and acknowledged as required by law existing at the time of their attempted execution. This omission rendered her attempted deeds of conveyance to him absolutely null and void and consequently conveyed no interest in and to said land to him. [Jones v. Himmelberger-Harrison Lbr. Co., 223 S. W. l. c. 69; Powell v. Bowen, 214 S. W. 142; Evans v. Morris, 234 Mo. 177; Belo v. Mayes, 79 Mo. 67; Bagby v. Emberson, 79 Mo. 139; Wannell v. Kem, 57 Mo. 578.]

Since those deeds were void and conveyed none of her interest in her lands to her husband, and since the pleadings in this case in no manner attempt to deprive her of any of her interests in and to her said one hundred and eighty acres of land, we may put it aside and banish it from this case, for otherwise it would only tend to confuse.

Returning to the question we were considering when we departed to dispose of the preliminary question before mentioned: namely, was the widow a competent witness, because of her substantial interest in the subject-matter of the deed and litigation? We have just eliminated all of her substantial individual interests from this deed and litigation, as previously shown.

The defendants, the widow and daughters, are asserting title to the remaining three hundred and ninety-eight acres of land mentioned, by means of the deed in controversy and by that means only, she, a life estate, and they, the remainder in fee, and James F. Meador, the other party to that deed, contract and cause of action in issue and on trial, being dead, brings her squarely within the letter and spirit of the disqualifying statute.

This conclusion does not conflict with or overrule the doctrine laid down in the case of Fugate v. Pierce, 49 Mo. 441, which holds that it was not the intention of this statute to exclude the testimony of the wife when she is a substantial party to the suit, whether joined with the husband or not.

Her interest there mentioned means her individual interest, separate and distinct from any claimed through her husband by means of the contract in issue and on trial, and not, as in this case, where she acquired at least a life estate in some three hundred and ninety-eight acres of land belonging to him by means of the deed in controversy, the validity of which depended upon his testimony. Had she been called upon to testify regarding the one hundred and eighty acres of land she owned, and which was included and conveyed by the same deed, quite another question would then confront us.

I therefore hold that the testimony of Mrs. Ward was hearsay, pure and simple, and had no probative force whatever, and that Anna Meador, the wife or widow, was disqualified as a witness in the case, and that the ruling of the court in admitting those two witnesses to testify was erroneous.

II. Were it not for Section 5415, Revised Statutes 1919, the error pointed out on Paragraph I of this opinion would be reversible. That section, in so far as here material, reads: ''No married woman shall be disqualified as a witness in any civil suit or proceeding prosecuted in the name of or against her husband: . . . third, in all matters of business transactions when the trans-

303 Mo. Sup.—13.

action was had and conducted by such married woman as the agent of her husband." Mrs. Meador, the wife and widow of James F. Meador, the grantor of the deed, testified that "upon returning to his home after deceased and she had acknowledged the deed before the notary, he turned it over to her, his wife, to keep for the girls." She further testified that "on the Thursday morning before his death deceased told her to give the deed to the girls, that it might be recorded."

This testimony clearly comes within the last section of the statute mentioned and under the repeated decision of this court the ruling of the trial court was clearly correct. [Reed v. Peck, 163 Mo. 333; Leete v. Bank, 115 Mo. 184; Orchard v. Collier, 171 Mo. l. c. 399.]

This testimony of the widow was uncontradicted, but upon the other hand was corroborated by the facts that they signed, acknowledged and retained the deed long after it was executed, and down to its actual delivery.

Finding no error in the record, it follows that the judgment of the circuit court should be affirmed. I therefore concur in the result.